UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                              CASE NO. 13-30958 - LMI

HORTENCIA A. LIZARDO,                               CHAPTER 7
    *aka Hortencia Araliz Lizardo*
    *aka Hortensia Lizardo*


          Debtor.
_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

**Any interested party who fails to file and serve a written response to this motion within 14 days after the date of service stated in this motion shall, pursuant to Local Rule 4001-1(C), be deemed to have consented to the entry of an order granting the relief requested in this motion.**

Movant, US Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for the Holders of the RAAC Series 2007-RP4 Trust, Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP4, by and through its undersigned attorney, moves for relief from the automatic stay and states as follows:

    1.    Movant is a secured creditor of the above Debtor and brings this Motion pursuant to the provisions of 11 U.S.C. § 362 (d) of the Bankruptcy Code.

    2.    The Debtor has an interest in certain real property in Miami-Dade County, Florida described as:

> **LOT 74, BLOCK 1 OF PATIO HOMES OF DORAL PINES FIRST ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 141 AT PAGE 92 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

> a/k/a 5774 NW 99th Avenue, El Doral, FL 33178

    3.    Said real property is subject to a Mortgage securing payment of a promissory note

which Movant is entitled to enforce as the holder or transferee thereof.  The Note and Mortgage are dated October 26, 2006, and the Mortgage was recorded on November 8, 2006 in Official Record Book 25081 at Page 0327-347 of the Public Records of Miami-Dade County, Florida. The original parties to the Mortgage were Hortensia Lizardo a/k/a Hortencia A. Lizardo a/k/a Hortencia Araliz Lizardo as mortgagor and Mortgage Lenders Network USA, Inc. as mortgagee. Copies of the Note and Mortgage are attached hereto as Exhibit "A".

4.      The Unpaid Principal Balance of this loan is $195,306.57.

5.      The total prepetition indebtedness owed is $306,712.81.  The total post-petition indebtedness owed is $6,359.40.  The Indebtedness Worksheet is attached hereto as Exhibit "B".

6.      The Debtor is in default under the terms of the loan documents.  The loan is contractually due for October 1, 2009.  The details of the default are set forth in the Affidavit of Indebtedness attached as Exhibit "C".

7.      Pursuant to the Miami-Dade County Property Appraiser, the property is valued at $238,808.00.  A copy of the tax assessor`s value is attached as exhibit "D".  There is little or no equity to benefit the estate.

8.      Upon information and belief, said property has not been declared exempt by the Debtor.  The property has not been abandoned by the Trustee.

9.      The post-petition payment address is:

Ocwen Loan Servicing, LLC
Attn: Payment Processing
3451 Hammond Avenue
Waterloo, IA 50702

10.     Movant does not have adequate protection of its interest in the Real Property because of the significant mortgage arrears and the lack of equity in the property. Consequently, cause exists to modify the automatic stay of 11 USC § 362 (d)(1).

11.     So that Movant may expeditiously pursue the enforcement of its rights under the Mortgage noted above, Movant requests that, pursuant to Fed. R. Bankr. P. 4001(a)(3), the 14 day stay of the Order for Relief from Stay be waived.

12.     A proposed order is attached hereto as Exhibit "E".

WHEREFORE, Movant requests that the Court enter an Order granting relief from the automatic stay, waiving the 14 day stay imposed by FRBP 4001(a)(3), that Movant be permitted to offer and provide Debtor with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor, and such other relief as this Court deems just and proper.

Respectfully Submitted,

By: /s/Clive N. Morgan
Clive N. Morgan
Florida Bar Number 357855
Attorney for Secured Creditor

Pendergast & Morgan, P.A.
6675 Corporate Center Parkway
Suite 301
Jacksonville, FL 32216
Phone: 904-508-0777
Fax: 904-296-2669
Email: cmorgan@penderlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that copies of the foregoing MOTION FOR RELIEF FROM

AUTOMATIC STAY have been furnished by regular U.S MAIL and/or by Electronic Mail

to all parties listed below this 8th day of October, 2013.


Hortencia A. Lizardo
5774 NW 99 Avenue
Doral, FL 33178

Richard J. Adams
1165 W 49 St #107
Hialeah, FL 33012

Maria Yip
Chapter 7 Trustee
2 S. Biscayne Blvd #2690
Miami, FL 33131

U.S. Trustee
Office of the United States Trustee
51 SW First Avenue, Room 1204
Miami, FL 33130

By: /s/<u>Clive N. Morgan</u>
Clive N. Morgan
Florida Bar Number 357855
Attorney for Secured Creditor

Pendergast & Morgan, P.A.
6675 Corporate Center Parkway
Suite 301
Jacksonville, FL 32216
Phone: 904-727-9300
Fax: 904-296-2669
Email: cmorgan@penderlaw.com

# ALLONGE TO NOTE

Date of Allonge:          12/19/2006

Loan #:                   <span style="color:red">REDACTED</span>

Note Date:                10/26/2006

Loan Amount:              $197,000.00

Property Address:         5774 NW 99TH AVENUE
                          EL DORAL, FL   33178

In favor of:              Mortgage Lenders Network, USA, Inc.

And Executed by:          HORTENSIA LIZARDO

Pay to the order of
Without recourse: _____

By: _____

Name:  Michele Morales
       Manager of Sales and
Acquisitions
       Emax Financial Group, LLC

REDACTED

# BALLOON NOTE
### (Fixed Rate)

TRUE AND CERTIFIED COPY

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

October 26, 2006                KISSIMMEE                    Florida
[Date]                          [City]                       [State]
5774 NW 99TH AVENUE
EL DORAL, FL  33178
                                       [Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $   197,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **MORTGAGE LENDERS NETWORK USA, INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        **8.8500**   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the **1st**        day of each month beginning on **December 1, 2006**   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **November 1, 2036**                  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **10 RESEARCH PARKWAY, WALLINGFORD, CT  06492**

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $       **1,496.88**     .

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT      Form 3260 1/01
Page 1 of 3
REDACTED
VMP MORTGAGE FORMS - (800)521-7291                        Initials 

REDACTED

REDACTED

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

* Except as set forth in the attached Prepayment Penalty Addendum.

Form 3260 1/01

Initials: _____

REDACTED

REDACTED

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  
-Borrower

_____ (Seal)  
HORTENSIA LIZARDO  -Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE** *(Sign Original Only)*
By: MORTGAGE LENDERS NETWORK USA, INC.

ROBERT JONES
CLOSER

REDACTED

Page 3 of 3                                    Form 3260 1/01

## PREPAYMENT PENALTY NOTE ADDENDUM

For a valuable consideration, receipt of which is hereby acknowledged the undersigned agree that certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said promissory note or the Deed of Trust, Mortgage, Real Estate Mortgage, Security Deed (Security Instrument) securing same.

This Addendum is attached to and made a part of that certain Promissory Note given by
**HORTENSIA LIZARDO**

(Borrower) to

**MORTGAGE LENDERS NETWORK USA, INC.**
(Lender), dated October 26, 2006 , which Note is in the principal amount of
$  197,000.00 

### PREPAYMENT PENALTY

After Three        3        full year(s)    from the date hereof, maker may pre-pay, without penalty, the outstanding principal balance. In the event maker prepays in full the outstanding principal balance and accrued interest during the first **Three**
**3**        full year(s) from the date hereof, maker shall pay in addition to such prepayment a penalty in an amount equal to a percentage of the principal portion of the amount so pre-paid in accordance with the following:

If paid during the first year from the date hereof, Five percent
(    5.0000  %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the second year from the date hereof, Five percent
(    5.0000  %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the third year from the date hereof, Five percent
(    5.0000  %) of the portion of such prepayment equal to the principal amount so prepaid.

The prepayment fee shall be payable upon full payment, voluntary or involuntary; including but not limited to a prepayment resulting from Note holder's permitted acceleration of the balance due on the Note. Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note, provided that such balance shall be applied to the principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment under the Note.

| | | | |
|---|---|---|---|
| _Hortensia Lizardo_ | 10/26/2006 | | 10/26/2006 |
| Borrower | Date | Borrower | Date |
| HORTENSIA LIZARDO | | | |
| | 10/26/2006 | | 10/26/2006 |
| Borrower | Date | Borrower | Date |



REDACTED

CFN 2006R1199348
OR Bk 25081 Pgs 0327 - 347; (21pgs)
RECORDED 11/08/2006 12:50:16
MTG DOC TAX 689.50
INTANG TAX 394.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:
MORTGAGE LENDERS NETWORK USA, INC.
213 COURT ST. MIDDLETOWN, CT 06457

RETURN TO: Robert Jones
GULFATLANTIC TITLE / Kathy Cope
909 E. OAK STREET
SUITE A
KISSIMMEE, FL 34744

REDACTED

This document was prepared by: Robert Jones
MORTGAGE LENDERS NETWORK USA, INC.
213 Court St. Middletown CT 06457

───────────────[Space Above This Line For Recording Data]───────────────

# MORTGAGE

REDACTED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **October 26, 2006** , together with all Riders to this document.

(B) "Borrower" is
**HORTENSIA LIZARDO**, A SINGLE PERSON

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is **MORTGAGE LENDERS NETWORK USA, INC.**

**FLORIDA**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS          Form 3010 1/01

REDACTED

Initials: _____

VMP MORTGAGE FORMS - (800)521-7291



21

REDACTED

Lender is a **corporation or association**
organized and existing under the laws of **Delaware**
Lender's address is **213 Court St. Middletown CT 06457**

(E) **"Note"** means the promissory note signed by Borrower and dated **October 26, 2006**
The Note states that Borrower owes Lender **One Hundred Ninety-Seven Thousand and No/100** ---------------------------------------------- Dollars
(U.S. $      **197,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2036**      .

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

REDACTED

Page 2 of 16          Initials: _____          Form 3010  1/01

REDACTED

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **COUNTY**          [Type of Recording Jurisdiction]
of **DADE**          [Name of Recording Jurisdiction]:
**SEE ATTACHED SCHEDULE A**

Parcel ID Number:          which currently has the address of
**5774 NW 99TH AVENUE**          [Street]
**EL DORAL**          [City], Florida **33178**          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

REDACTED

Page 3 of 16          Initials: _____          Form 3010  1/01

REDACTED

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

REDACTED

REDACTED

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

REDACTED

Initials

Form 3010  1/01

REDACTED

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard

REDACTED

REDACTED

or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise

REDACTED

Initials

REDACTED

agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

REDACTED

Page 8 of 16

Initials _____

Form 3010  1/01

REDACTED

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

REDACTED

Initials

Form 3010  1/01

REDACTED

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

REDACTED

Initials: _____

Form 3010  1/01

REDACTED

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

   **13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

   Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

   **14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

   If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

   **15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument

REDACTED

REDACTED

shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument,

REDACTED

Initials: _____

Page 12 of 16                                                    Form 3010  1/01

REDACTED

and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental

REDACTED

Initials: _____

Form 3010  1/01

REDACTED

Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

REDACTED

Initials: _____

Form 3010  1/01

REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _Hortensia Lizardo_____ (Seal)
                                      HORTENSIA LIZARDO            -Borrower
                                      5774 NW 99 Ave, Miami, FL 33178


                                                              (Address)

_____    _____ (Seal)
                                                                   -Borrower


                                                              (Address)

_____ (Seal)    _____ (Seal)
                        -Borrower                                  -Borrower


            (Address)                                         (Address)

_____ (Seal)    _____ (Seal)
                        -Borrower                                  -Borrower


            (Address)                                         (Address)

_____ (Seal)    _____ (Seal)
                        -Borrower                                  -Borrower


            (Address)                                         (Address)

REDACTED              Page 15 of 16                    Form 3010  1/01

REDACTED

**STATE OF FLORIDA,**     Miami - Dade    **County ss:**

     The foregoing instrument was acknowledged before me this **October 26, 2006**          by

**HORTENSIA   LIZARDO**

who is personally known to me or who has produced   FL DL# L2463-321-67-621-0   as identification.

                           _____   Oct 26, 2006

         Notary Public     Carolina D. Norman

```
CAROLINA D NORMAN
NOTARY PUBLIC - STATE OF FLORIDA
COMMISSION #517278
MY COMMISSION EXPIRES FEB. 12, 2010
```

REDACTED

Page 16 of 16         Initials: _____         Form 3010  1/01

REDACTED

**Exhibit "A"**

Lot 74, Block 1 of PATIO HOMES OF DORAL PINES FIRST ADDITION, according to the plat thereof, as recorded in Plat Book 141 at Page 92 of the Public Records of Miami-Dade County, Florida.

REDACTED

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **26th** day of **October 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **MORTGAGE LENDERS NETWORK USA, INC.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**5774 NW 99TH AVENUE   , EL DORAL, FL 33178**

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **the covenants, conditions and restrictions in the declarations of PATIO HOMES OF DORAL**

(the "Declaration"). The Property is a part of a planned unit development known as
**PATIO HOMES OF DORAL**

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**

REDACTED

REDACTED

Page 1 of 3    Initials: _____

VMP Mortgage Solutions, Inc. (800)521-7291

REDACTED

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

REDACTED

Initials: _____

Page 2 of 3

Form 3150 1/01

REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
HORTENSIA   LIZARDO          -Borrower                                   -Borrower
5774 NW 99 Ave, MIami, FL 33178

_____ (Seal)        _____ (Seal)
                            -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                   -Borrower

REDACTED

Page 3 of 3                              Form 3150 1/01

OR BK 25081 PG 0347
LAST PAGE

REDACTED

## BALLOON RIDER
### (Mortgage Balloon Loans)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

_____    (Seal)
HORTENSIA    LIZARDO                                  -Borrower
5774 NW 99 Ave, Miami, FL 33178

_____    (Seal)
                                                     -Borrower

_____    (Seal)
                                                     -Borrower

_____    (Seal)
                                                     -Borrower

REDACTED            REDACTED

CFN 2010R0624151
OR Bk 27420 Ps 3846i (1ps)
RECORDED 09/15/2010 10:10:29
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

Prepared by:      DAVID J. STERN, ESQ
Record &Return to:   900 South Pine Island Road Suite 400

**REDACTED**

## ASSIGNMENT OF MORTGAGE

### KNOW ALL MEN BY THESE PRESENTS:

*THAT* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for MORTGAGE LENDERS NETWORK USA, INC.

Residing or located at c/o 213 COURT ST., MIDDLETOWN, CT  06457, herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE residing or located at: C/O GMAC MORTGAGE, LLC, 1100 VIRGINIA DRIVE, FT. WASHINGTON, PA 19034 herein designated as the assignee, the mortgage executed by HORTENSIA LIZARDO, A SINGLE PERSON  recorded in MIAMI-DADE County, Florida at book 25081 and page 327 encumbering the property more particularly described as follows:

**LOT 74, BLOCK 1, OF PATIO HOMES OF DORAL PINES FIRST ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 141 , PAGE 92, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

together with the note and each and every other obligation described in said mortgage and the money due and to become due thereon

TO HAVE AND TO HOLD the same unto the said assignee forever, but without recourse on the undersigned.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed , this *20* day of *July* , 2010, but effective as of the 18th  day of May, 2010.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
as nominee for MORTGAGE LENDERS NETWORK USA, INC.
(CORPORATE SEAL)

ATTEST:                                BY:
WITNESS:                               PRINT NAME:
                                       TITLE:

Print Name: *Amber Szczepanski*

WITNESS:                               **Jeffrey Stephan**
Print Name: *Deborah L. Green*              Vice President

STATE OF *PA*
COUNTY OF *Montgomery*

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on  this *20* day of *July* , 2010, within my jurisdiction, the within named **Jeffrey Stephan** who is personally known to me and who acknowledged to me that (s)he is **Vice President** and that for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for MORTGAGE LENDERS NETWORK USA, INC., and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for MORTGAGE LENDERS NETWORK USA, INC., to do so.

WITNESS my hand and official seal in the County and State last aforesaid this *20* day of *July* , 2010.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nikole Shelton, Notary Public
Upper Dublin Twp, Montgomery County
My Commission Expires Aug. 11, 2010
Member, Pennsylvania Association of Notaries

NOTARY PUBLIC

**REDACTED**

RE:                                                                                          Case #:

# INDEBTEDNESS WORKSHEET

### DEBT AS OF THE PETITION DATE

A.      **Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date: $_____**

      1.   Amount of principal: $_____

      2.   Amount of interest: $_____

      3.   Amount of escrow (taxes and insurance): $_____

      4.   Amount of forced placed insurance expended by movant: $_____

      5.   Amount of attorneys' fees billed to debtor(s) pre-petition: $_____

      6.   Amount of pre-petition late fees, if any, billed to  debtor(s): $_____

      7.   Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above: _____ (if additional space is needed, list the amounts on a separate sheet and attach the sheet as an exhibit to this form, please list the exhibit number here: _____.)

B.      **Contractual interest rate: _____  (if interest rate is (or was) adjustable, list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; list the exhibit number here:_____.)**

CG-10 (12/01/09)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
## AS OF

**C.**     **Date last payment was received:** _____ <o o  ff f l{{{{""""""">

**D.**     **Alleged total number of payments due postpetition from filing of petition through payment due on <""""""""""""""""""">: _____.**

**E.**     **All postpetition payments alleged to be in default:**

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Aplied To Principal | Amount Applied To Interest | Amount Applied To Escrow | Late fee Charged (If any) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Totals: $ | $ | $ | $ | $ | $ | $ |

**F.**     **Amount of movant's attorneys fees billed to debtor for the preparation, and filing and prosecution of this motion: $_____**

**G.**     **Amount of movant's filing fee for this motion: $_____**

**H.**     **Other attorneys' fees billed to debtor post-petition: $_____**

**I.**     **Amount of movant's post-petition inspection fees: $_____**

**J.**     **Amount of movant's post-petition appraisal broker's price opinion: $_____**

**K.**     **Amount of forced placed insurance or insurance provided by the movant post-petition: $ _____**

**L.**     **Sum held in suspense by movant in connection with this contract, if applicable: $ _____**

**M.**     **Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor etc (itemize each charge): $_____**

CG-10 (12/01/09)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                          CASE NO. 13-30958 - LMI

HORTENCIA A. LIZARDO,                           CHAPTER 7
*aka Hortencia Araliz Lizardo*
*aka Hortensia Lizardo*

Debtor.                          /

**AFFIDAVIT IN SUPPORT OF OCWEN LOAN SERVICING, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY**

I, ___Wendy McLaughlin___, do hereby state pursuant to 28 U.S.C. §1746 as follows:

1.  I am over 18 years of age, not a party to the above captioned action, and competent to be a witness.

2.  I am employed by Ocwen Loan Servicing, LLC ("Ocwen Loan Servicing, LLC") who is the authorized loan servicing agent for US Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for the Holders of the RAAC Series 2007-RP4 Trust, Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP4 (the "Creditor") regarding the mortgage loan on the real property of Hortensia Lizardo a/k/a Hortencia A. Lizardo a/k/a Hortencia Araliz Lizardo (the "Debtor") that is the subject of the Motion for Relief from Automatic Stay filed on behalf of Creditor (the "Motion") and in this capacity as ___Bankruptcy Specialist___ of Ocwen Loan Servicing, LLC have personal knowledge of the facts and matters stated herein.

3.  My training includes instruction on how to access business records necessary to offer testimony concerning loan status and documentation. My experience in performing my job tasks includes accessing these documents per my training. My testimony is based upon my training, my experience in doing my job and my knowledge of Ocwen Loan Servicing, LLC's record keeping

-1-

system, the practices that are followed when entries or documents are added to Ocwen Loan Servicing, LLC's electronic record, and my review of this Debtor's particular file in the electronic record.

4.    I am experienced in the course of performing my job functions with the process by which Ocwen Loan Servicing, LLC maintains its loan records relating to accounts, including the Debtor's account, that are serviced by Ocwen Loan Servicing, LLC.  Based upon my observations, training, and experience, I know that entries in the records are made at or near the time of the event recorded by or with information from a person with knowledge of the event recorded and that the records kept are a matter of the business routine in the course of regularly conducted business at Ocwen Loan Servicing, LLC.  During the ordinary course of business, I have regular access to the books and records to which I am testifying to and review the books and records as they pertain to the Debtor's account prior to executing this declaration.

5.    The record services group ("Record Services Group") at Ocwen Loan Servicing, LLC maintains loan documents and electronic images received from lenders or prior servicers.  The electronic copies are maintained in its computerized records system, which is made available to the Ocwen Loan Servicing, LLC loan processors, who in turn provide counsel representing Ocwen Loan Servicing, LLC with copies of the relevant loan documents maintained in the computerized records.

6.    If a promissory note is transferred or sold to another entity, Ocwen Loan Servicing, LLC's record keeping procedure requires that an entry on the record be made to reflect the transfer. The absence of such an entry of transfer indicates that Creditor retains dominion and control over the note.  No entries of a transfer by Creditor to any other party regarding the Debtor's account exist in Ocwen Loan Servicing, LLC's records at this time.

7.    The business records summarized herein constitute records and/or data compilations of transactions relating to the mortgage loan of the Debtor (the "Records").  I have reviewed these Records in preparation of the statements made herein.

-2-

8.    According to the Records, the Debtor is in default under the obligations under the Note and Mortgage (collectively the "Loan").

9.    I have reviewed the documents attached as exhibits to the Motion, and they are true and accurate copies of the documentation in the Records.

10.    According to the Records, the obligations of the Debtor under the Loan as of the commencement of this case on August 30, 2013 (the "Petition Date") are as follows:

| Unpaid Principal Balance | $195,306.57 |
|---|---|

11.    According to the Records, the contractual due date under the Debtor's Loan is October 1, 2009.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on _9/16/2013_

State: **Pennsylvania**

County: **Montgomery**

Signature

**Wendy McLaughlin**

Name

Authorized Signer, Ocwen Loan Servicing, LLC as servicing agent for U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for the Holders of the RAAC Series 2007-RP4 Trust, Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP4

Sworn to and subscribed before this ___16___ day of ___September___, 20_13_. By ___Wendy McLaughlin___ who is personally known to me and who did take an oath.

Notary Public   Lisa Howlin Thomas
My commission expires: May 8, 2016

NOTARIAL SEAL
LISA HOWLIN THOMAS
Notary Public
CHELTENHAM TWP, MONTGOMERY COUNTY
My Commission Expires May 8, 2016

-3-



| Home | Departments | Government | Employees | Calendar | | Call 3-1-1 | Search |

## MIAMI-DADE COUNTY PROPERTY APPRAISER
# Carlos Lopez-Cantera
PROPERTY APPRAISER

| Property Appraiser Home | Exemptions & Other Benefits | Real Estate | Tangible Personal Property | Public Records | Online Tools | Tax Roll Administration | About Us | Contact Us |

The Property Appraiser does not send tax bills and does not set or collect taxes. Please visit the Tax Collector's website directly for additional information.

Facebook    Twitter                                                   Print    E-mail Link    Share

Search: Folio, Owner Name or Address
Enter either folio, owner name, or address.

Folio: 35-3020-038-0180
Property Address: 5774 NW 99 AVE
Owner: HORTENSIA LIZARDO
Mailing Address: 5774 NW 99 AVE
MIAMI FL 33178 -2674

**Selected Property Information**

Property Information

Full Legal Description

Assessment Information

Benefits Information

Sales Information

Additional Information

**Featured Online Tools**

Report Homestead Fraud

Tax Comparison

Tax Estimator

TRIM Notice

View Taxes

Additional Online Tools

Property Sales

### Assessment Information

| Year: | 2013 | 2012 | 2011 |
|---|---|---|---|
| Land Value: | $59,213 | $59,213 | $59,213 |
| BuildingValue: | $179,595 | $184,922 | $180,909 |
| Market Value: | $238,808 | $244,135 | $240,122 |
| Assessed Value: | $238,808 | $243,410 | $236,321 |

### Taxable Value Information

| | Exemption/ Taxable Value | Exemption/ Taxable Value | Exemption/ Taxable Value |
|---|---|---|---|
| County: | $50,000/ $188,808 | $50,000/ $193,410 | $50,000/ $186,321 |
| School Board: | $25,000/ $213,808 | $25,000/ $218,410 | $25,000/ $211,321 |
| City: | $50,000/ $188,808 | $50,000/ $193,410 | $50,000/ $186,321 |
| Regional: | $50,000/ $188,808 | $50,000/ $193,410 | $50,000/ $186,321 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                              CASE NO. 13-30958 - LMI

 HORTENCIA A. LIZARDO,                              CHAPTER 7


                  Debtor.
_____/

### ORDER GRANTING RELIEF FROM AUTOMATIC STAY

THIS CAUSE came on for consideration pursuant to the Motion for Relief from Automatic Stay (Doc. No. ) filed by US Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for the Holders of the RAAC Series 2007-RP4 Trust, Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP4 ("Movant"), a secured creditor in the above-styled cause.  The Court, having considered said Motion and the Certificate of No Response, finds it appropriate to grant relief under Local Rule 4001-1(C) without further notice or hearing.  Therefore it is

**ORDERED as follows:**

1.      The Motion for Relief from Stay filed by Movant is granted.

2.      The automatic stay provided by 11 U.S.C. § 362 is modified as to Movant, its

successors and assigns. Accordingly, the automatic stay is modified to permit Movant to

commence and prosecute a mortgage foreclosure action in state court against real property, the

legal description of which is described below.

> **LOT 74, BLOCK 1 OF PATIO HOMES OF DORAL PINES FIRST
> ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED
> IN PLAT BOOK 141 AT PAGE 92 OF THE PUBLIC RECORDS OF
> MIAMI-DADE COUNTY, FLORIDA.**
>
> **a/k/a 5774 NW 99th Avenue, El Doral, FL 33178**

3.      This Order is entered for the sole purpose of allowing Movant to commence,

prosecute, and complete through judgment, sale, certificate of title, and possession, a mortgage

foreclosure against the property described above. Movant shall not seek or obtain an in personam

judgment against the Debtor.

###

Respectfully Submitted,

By: /s/<u>Clive N. Morgan</u>
Clive N. Morgan
Florida Bar Number 357855
Attorney for Secured Creditor

Pendergast & Morgan, P.A.
6675 Corporate Center Parkway
Suite 301
Jacksonville, FL 32216
Phone: 904-508-0777
Fax: 904-724-8428
Email: cmorgan@penderlaw.com

The Movant is directed to serve copies of this order on the parties listed and file a certificate of service with the Court.

Hortencia A. Lizardo
5774 NW 99 Avenue
Doral, FL 33178

Richard J. Adams
1165 W 49 St #107
Hialeah, FL 33012

Maria Yip
Chapter 7 Trustee
2 S. Biscayne Blvd #2690
Miami, FL 33131

U.S. Trustee
Office of the United States Trustee
51 SW First Avenue, Room 1204
Miami, FL 33130